UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TIKAPERSAUD RAMASHWAR,                     :

                            Plaintiff,        :

                                              :        05 Civ. 2021 (AJP)
            -against-                         :
                                                      **OPINION AND ORDER**
                                              :

POLICE OFFICER OTTO ESPINOZA &
POLICE OFFICER VINCENT FINNEGAN,              :

                            Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**ANDREW J. PECK, United States Chief Magistrate Judge:**

        Plaintiff Tikapersaud Ramashwar brought this action pursuant to 42 U.S.C. § 1983

alleging malicious prosecution amounting to a constitutional violation.  (Dkt. No. 1: Compl.; see

Dkt. No. 19: 9/27/05 Peck Order.[1/])  Presently before this Court is defendants' motion for summary

judgment (Dkt. No. 27: Notice of Motion for Summary Judgment).[2/]  The Court held oral argument,

at plaintiff's request, on January 5, 2006.

        The parties have consented to decision of this case by a Magistrate Judge pursuant

to 28 U.S.C. § 636(c). (Dkt. No. 20.)

_____

[1/]      Ramashwar's complaint alleged numerous other claims against defendants as well as against
          the City of New York and unidentified police officers.  (See Compl.)  After obtaining new
          counsel in this matter, Ramashwar voluntarily dismissed with prejudice all claims other than
          his malicious prosecution claim.  (See 9/27/05 Peck Order.)

[2/]      The Court's decision on defendants' motion for sanctions (see Dkt. No. 29: Notice of Motion)
          will be issued in a separate opinion and order.

For the reasons set for below, defendants motion for summary judgment is GRANTED.

## FACTS

### The Criminal Complaint Describing the Events Precipitating Ramashwar's Arrest

On August 8, 1999, defendant Police Officer Vincent Finnegan arrested Ramashwar. (Ramashwar Rule 56.1 Stmt. ¶ 5; Dkt. No. 23: Defs. Rule 56.1 Stmt. ¶ 5; Dkt. No. 26: Scharfstein Aff. Ex. B: Arrest Record.) Officer Finnegan attested in the criminal complaint filed against Ramashwar that he was informed by complaining witness Dennis Brown that Ramashwar hit Brown in the neck with a glass bottle and that "shortly thereafter" Ramashwar pulled out a gun and "fired a round into the air" and "pointed the gun toward complainant Brown and several other people standing alongside of him, and fired several rounds" from the gun causing Brown and others to run for cover. (Dkt. No. 41: Lichtmacher Aff. Ex. M: Finnegan Criminal Aff. at 1-2.) Officer Finnegan's criminal affidavit also stated that he was informed by another complaining witness, Jimmy Perez, that he tried to wrestle the gun away from Ramashwar and that Ramashwar shot the gun, aiming at Perez but hitting Ramashwar's father instead. (Id. at 2.) Further, Officer Finnegan attested that when he had responded to the incident location, he observed Ramashwar "in possession of a handgun shooting into a crowd of people and then further observed [Ramashwar] drop said handgun to the ground." (Id.)

**The Grand Jury**

Ramashwar testified before the grand jury. (Ramashwar & Defs. Rule 56.1 Stmt. ¶ 9; Scharfstein Aff. Ex. G: Ramashwar: Grand Jury Transcript ("Tr.").) According to Ramashwar, he was sitting in his backyard when a friend of his ran through his yard followed by about 20 men who were approaching Ramashwar's front yard. (Scharfstein Aff. Ex. G: Ramashwar: Grand Jury Tr. 46, 48-49, 57-58.) The crowd was led by a Hispanic man, later identified as Jimmie Perez, Sr., and approximately 9-12 people from the crowd came into Ramashwar's front yard. (<u>Id</u>. at 49-50.) Ramashwar came to the front yard to try to get everyone to leave. (<u>Id</u>. at 46, 50, 58-59.) Perez said he was looking for the person who hit someone in the head with a bottle and Perez pulled out a gun. (<u>Id</u>. at 46, 49-50, 58-59.) Ramashwar pushed Perez and the two men started "scrambling" while Ramashwar was telling him he had to get out of the yard. (<u>Id</u>. at 46-47, 51-52, 59-61.) Ramashwar's father came over and told the crowd they could not come into the yard and beat his son. (<u>Id</u>. at 46, 51, 52, 62-63.) Perez fired his gun twice before Ramashwar managed to knock the gun out of Perez's hand. (<u>Id</u>. at 51-52, 53, 55.) Ramashwar's father was hit by the first shot. (<u>Id</u>. at 54.) Perez and Ramashwar scrambled for the gun, and Ramashwar picked up the gun just as the police arrived and told him to drop the gun, which he did. (<u>Id</u>. at 52, 53-55.) The police shoved him to the ground and arrested him. (<u>Id</u>. at 57.) Ramashwar testified that the police refused to take a statement from him. (<u>Id</u>. at 56.)

Ramashwar asked Assistant District Attorney ("ADA") Maryam Lipkansky to call his neighbors as witnesses to testify to the grand jury. (Id. at 47-49, 66.) After Ramashwar left the stand, the ADA named the witnesses who Ramashwar requested be called and gave the grand jurors the chance to vote on whether they wanted to hear from them. (Id. at 66.)[3]

Officer Finnegan testified before the grand jury. (Ramashwar Rule 56.1 Stmt. ¶¶ 10, 31.) Apparently, Officer Espinoza did not testify before the grand jury.

On October 13, 1999, the grand jury indicted Ramashwar on charges of second degree attempted murder; second, third and fourth degree criminal possession of a weapon; second and third

---

[3] Ramashwar claims the grand jurors were asked to vote whether they wanted additional witnesses to testify after they heard defendant Officer Finnegan's testimony. (Ramashwar Rule 56.1 Stmt. ¶ 10.) A vote occurred, although its exact timing is not clear from the record. (See Scharfstein Aff. Ex. I: ADA Lipkansky Aff. in Opposition to Motion to Dismiss Indictment at 4 (Ramashwar "presented several witnesses for the Grand Jury's consideration, and the Grand Jury voted to hear from none of them.").)

degree assault;[4/] and first degree reckless endangerment.  (Ramashwar & Defs. Rule 56.1 Stmt. ¶ 11;

Scharfstein Aff. Ex. H: Indictment.)

---

[4/]    The third degree assault and fourth degree criminal possession of a weapon charges related to the complaining witness Dennis Brown who had been hit in the head with a glass bottle. (Ramashwar & Defs. Rule 56.1 Stmt. ¶ 13; Scharfstein Aff. Ex. H: Indictment at NYC 000092-93.)  Dennis Brown had informed the prosecutor on the night of the incident, August 8, 1999, that Ramashwar was the one who hit him with a glass bottle.  (Defs. Rule 56.1 Stmt. ¶ 12; Scharfstein Aff. Ex. E: Intake Bureau Crime Report.)  At Ramashwar's first criminal trial, Dennis Brown testified that before speaking to the prosecutor, he had been at the police precinct where the police had asked him to identify his assailant by showing him photographs.  (Ramashwar Rule 56.1 Stmt. ¶ 12; Lichtmacher Aff. Ex. D: Brown: Trial Tr. 287-88.)  Upon hearing this testimony, defense counsel asked for Brown's testimony to be stricken from the record as the defense had not received the required notice from the prosecutor that such identification testimony would be presented.  (Brown: Trial Tr. 287-88.)  The prosecutor informed the court that she had not been made aware of the photographic identification until just that moment, and that when she had spoken to the officers and asked them whether they had conducted any identification procedures, they had told her there had been none.  (Id. at 288; see Scharfstein Aff. Ex. E: Intake Bureau Crime Report, marked with "x" to indicate "No I.D. procedure.")

The trial judge asked Brown to explain what had occurred at the precinct; Brown responded that the police gave Brown a stack of 30 photographs to look at, most of which were of "cars and houses and stuff like that" and one of which was of a person whom he identified as Ramashwar.  (Lichtmacher Aff. Ex. D: Brown: Trial Tr. 304.)  It is unclear from the excerpt of Brown's trial testimony submitted by Ramashwar here whether Brown looked through all the photographs and only one of them was of an actual person – as Ramashwar suggests – or whether he identified the first person he saw in the stack of photographs and did not look further.  (See id.)  Further, it is unclear whether the judge admitted this testimony at trial or whether it was even determined to have been an identification procedure since the transcript excerpt Ramashwar submitted does not include any such rulings, if they occurred.

Additionally, at trial, Sewdat Harrichand testified that he was the one that committed the offense with the glass bottle.  (Ramashwar Rule 56.1 Stmt. ¶ 12; Lichtmacher Aff. Ex. A: S. Harrichand: Trial Tr. 705.)

Ramashwar moved to dismiss the indictment. ADA Lipkansky submitted an affidavit in opposition stating her "evaluation of the evidence, based on conversations with the complainants and several eyewitnesses . . . that the People's witnesses had been forthright" and truthful before the grand jury. (Ramashwar & Defs. Rule 56.1 Stmt. ¶ 14; Scharfstein Aff. Ex. I: ADA Lipkansky Aff. in Opposition to Motion to Dismiss Indictment at 4.)[5/]

On December 20, 1999, Supreme Court, Queens County, denied Ramashwar's motion to dismiss the indictment, finding that "upon examination of the Grand Jury minutes," there was "sufficient legal evidence" to support the indictment. (Scharfstein Aff. Ex. J: 12/20/99 Justice Grosso Order; see Ramashwar & Defs. Rule 56.1 Stmt. ¶ 15.)

**Ramashwar's First Trial**

In September 2000, Ramashwar was tried by a jury on the indicted charges. (See Ramashwar & Defs. Rule 56.1 Stmt. ¶ 16.) The prosecution and the defense presented two different versions of the incident to the jury.

**The Prosecution Case at Trial**

The prosecution's witnesses testified that they saw Ramashwar with the gun and that Ramashwar fired shots into the air and into the crowd. (Ramashwar & Defs. Rule 56.1 Stmt. ¶¶ 16-

---

[5/]     Ramashwar points out that his conviction after the first trial on these indicted charges was overturned because of this same ADA's misconduct at trial. (Ramashwar Rule 56.1 Stmt. ¶ 14; see page 11 below.)

20; Scharfstein Aff. Ex. K: Brown: Tr. 237-40;[6] Livingston: Tr. 382-84; Perez, Jr.: Tr. 462-63, 504; Echevarria: Tr. 538-39, 542.)[7] Shaun Livingston, a witness at the scene, testified he heard two shots fired by Ramashwar just as the police were pulling up in their car. (Livingston: Tr. 384.) Jimmy Perez, Jr. testified that Ramashwar fired an additional shot into the air once the police had already arrived. (Perez, Jr.: Tr. 463.) Antonia Echevarria testified that two shots were fired before the police showed up. (Echevarria: Tr. 540.)

The witnesses testified that when the police arrived on the scene, Ramashwar tried to run away into his back yard and threw the gun as he was running. (Ex. K: Brown: Tr. 240; Livingston: Tr. 385; Perez, Jr.: Tr. 463.) Echevarria testified that Ramashwar fired two additional shots in the air as the police were chasing him and then just threw the gun into the air. (Ex. K: Echevarria: Tr. 541.)

Brown, the witness who was hit by the glass bottle, testified that he knew Jimmy Perez, Sr. worked for the police department. (Lichtmacher Aff. Ex. C: Brown: Tr. 254-55.)

---

[6] Hereinafter, citations to "Tr." are to the first trial's transcript, contained in Scharfstein Aff. Ex. K unless otherwise noted.

[7] Brown testified that there was no scuffle between Ramashwar and Perez, Sr. and that Ramashwar started shooting once the police were driving down the street to the scene. (Id. at 281-82.) Shaun Livingston and Jimmy Perez, Jr., on the other hand, testified that there was a fight between Ramashwar and Perez, Sr. and it was during that scuffle that Ramashwar pulled out the gun from his pocket. (Livingston: Tr. 382; Perez, Jr.: Tr. 503-04.) Jimmy Perez, Jr. testified that he hit Ramashwar once he saw his father, Jimmy Perez, Sr., hit Ramashwar and then Ramashwar pulled out the gun and shot into the air. (Perez, Jr.: Tr. 504.)

Jimmy Perez, Sr. testified that Ramashwar pulled out a gun and fired one shot and that is when he started to wrestle with Ramashwar. (Scharfstein Aff. Ex. K: Perez, Sr.: Tr. 566-67.) Ramashwar's father got in between them. (Id. at 567.) Perez, Sr. heard sirens, another shot went off, Ramashwar backed up and shot again into the air, at which point the police got out of their car and told Ramashwar to freeze. (Id at 569.) Another shot went off before Ramsahwar ran towards his driveway and threw the gun. (Id.)

Brown and Livingston are childhood friends. (Lichtmacher Aff. Ex. Q: Livingston: Tr. 375.) Jimmy Perez, Sr. and Jimmy Perez, Jr. are father and son. (See Scharfstein Aff. Ex. K: Perez, Jr.: Tr. 462.) Jimmy Perez, Jr. knew approximately five of the people in the crowd from around the neighborhood. (Lichtmacher Aff. Ex. S: Perez, Jr.: Tr. 450.) Echevarria has known Brown since 1995. (Lichtmacher Aff. Ex. T: Echevarria: Tr. 529.) Livingston testified that Jimmy Perez, Sr. is his basketball coach. (Lichtmacher Aff. Ex. R: Livingston: Tr. 389.)

Defendant Police Officer Espinoza testified at trial that when he arrived at the scene, he saw Ramashwar "shooting over the top of the people standing in front of him." (Lichtmacher Aff. Ex. H: Espinoza: Tr. 349, 350, 357.) Officer Espinoza testified that as he first arrived he heard one shot and as they were getting out of the police car, he heard two more shots fired. (Id. at 350.) Once Officer Espinoza was out of the car, with his gun drawn, Ramashwar saw him, dropped the gun and tried to run to the back of the house. (Id. at 351.) After arresting Ramashwar, Officer Espinoza stayed at the scene until the EMS, detectives and the supervisor arrived and in that time did not speak to any witnesses. (Id. at 371.)

Defendant Police Officer Finnegan also testified at trial that he saw Ramashwar firing a gun into the crowd. (Lichtmacher Aff. Ex. J: Finnegan: Tr. 636-37, 652, 656.) As he approached the scene in the police car, Officer Finnegan observed two or three shots fired, one of which he saw skim across the ground and hit a car across the street. (Id. at 638.) When Ramashwar saw the police coming, Ramashwar started running, fired a shot into the air and dropped the gun. (Id.) Once Ramashwar was arrested, Officer Finnegan spoke to several people at the scene, but could not recall who and did not make notes about his conversations. (Id. at 658-59.) He did recall speaking to Jimmy Perez, Sr. at the scene. (Id. at 659.) Perez, Sr. told Officer Finnegan that he worked for the police department – "for the horses." (Id.) Officer Finnegan got the information about what had happened at the scene from Perez, Sr. (Id. at 660.)

### Ramashwar's Case at Trial

Several witnesses testified for the defense at trial, providing testimony consistent with Ramashwar's grand jury testimony.

Sewdat Harrichand testified at trial that he was the one who hit Dennis Brown with the bottle. (Lichtmacher Aff. Ex. A: S. Harrichand: Tr. 705; see Lichtmacher Aff. Ex. B: G. Harrichand: Tr. 697.)

The defense witnesses testified that it was Jimmy Perez, Sr. who had a gun in his hand, not Ramashwar. (Lichtmacher Aff. Ex. E: N. Ramashwar: Tr. 778; Lichtmacher Aff. Ex. F: L. Raghuber: Tr. 742; Lichtmacher Aff. Ex. G: K. Raghuber: Tr. 756.) Ramashwar's sister testified that Perez pulled a gun from his pocket, grabbed Ramashwar and told him "'I will blow your fucking

head off.'"  (Lichtmacher Aff. Ex. E: N. Ramashwar: Tr. 778.)  The two men scuffled during which Ramashwar grabbed Perez around the wrist of the hand in which Perez held the gun, and that is when a shot went off.  (Lichtmacher Aff. Ex. F: L. Raghuber: Tr. 731, 734; Lichtmacher Aff. Ex. G: K. Raghuber: Tr. 756, 757, 759.)   Perez, Sr. showed his I.D. to Ramashwar's sister and her family during the argument but before the shooting and told them he worked with the police department. (Lichtmacher Aff. Ex. E: N. Ramashwar: Tr. 782-83.)

Two shots went off before Ramashwar picked up the gun after knocking it to the ground out of Perez's hand.  (Id. at 779-80, 794-95; Lichtmacher Aff. Ex. F: L. Raghuber: Tr. 732.) According to Lela Raghuber, Ramashwar's neighbor, the police car was at the scene before the first shot was fired.  (Lichtmacher Aff. Ex. G: L. Raghuber: Tr. 750.)  According to Krishna Raghuber, after the first shot, Perez, Sr. dropped the gun and started to walk away at the same time the police were arriving; he then heard two more shots and then saw the police with their guns drawn. (Lichtmacher Aff. Ex. G: K. Raghuber: Tr. 759, 763.)

Ramashwar's sister testified that once the police had arrested Ramashwar, she screamed for them to take her statement, but they refused to do so.  (Lichtmacher Aff. Ex. E: N. Ramashwar: Tr. 782.)  According to Ramashwar's sister, Perez, Sr. spoke with the police when they arrived at the scene but "they didn't even bother with him."  (Id. at 783.)  According to Lela Raguber, who did not know Ramashwar's name before the incident (Lichtmacher Aff. Ex. F: L. Raghuber: Tr. 728), she pointed out Perez, Sr. to the police as the man who had the gun, and that

Ramashwar was the wrong guy.  (<u>Id</u>. at 737.)  One police officer told the senior officer to whom Raghuber was speaking not to listen to her, "she doesn't know what she saw."  (<u>Id</u>.)

**Verdict**

On October 27, 2000 the jury convicted Ramashwar of first degree reckless endangerment, and acquitted him of all other charges.  (Ramashwar & Defs. Rule 56.1 Stmt. ¶ 21.) <u>See</u> <u>People</u> v. <u>Ramashwar</u>, 299 A.D.2d 496, 496, 749 N.Y.S.2d 886, 886 (2d Dep't 2002). Ramashwar spent over two years in jail before this conviction was reversed, as discussed below. (Scharfstein Aff. Ex. A: Compl. ¶ 12.)

**Ramashwar's Appeal and Second Trial**

On November 18, 2002, the Second Department reversed Ramashwar's conviction and ordered a new trial, holding:

> Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, and a new trial is ordered.

> We agree with the defendant's claim that the prosecutor injected the issue of her own credibility into the trial when she questioned two defense witnesses regarding their prior statements to her in a telephone interview.  When the witnesses either sought to explain the statements or could not recall making the statements, the prosecutor then sought to impeach the witnesses with their alleged prior responses. In doing so, he prosecutor's credibility became an issue at trial and deprived the defendant of a fair trial.  Moreover, it was improper for the prosecutor to comment upon those inconsistencies in summation, thus putting the prosecutor's credibility in issue for the jury's consideration and evaluation.

<u>People</u> v. <u>Ramashwar</u>, 299 A.D.2d 496, 496-97, 749 N.Y.S.2d 886, 886 (2d Dep't 2002) (citations omitted).  (<u>See</u> Ramashwar & Defs. Rule 56.1 Stmt. ¶¶ 22-23.)

Ramashwar was tried for a second time.  Officers Espinoza and Finnegan testified at Ramashwar's second trial.  (Ramashwar Rule 56.1 Stmt. ¶ 29.)[8/]  On April 14, 2003 Ramashwar was found not guilty.  (Ramashwar & Defs. Rule 56.1 Stmt. ¶ 26; Scharfstein Aff. Ex. A: Compl. ¶ 12; Lichtmacher Aff. Ex. U: Certificate of Disposition.)

**The Instant § 1983 Claim**

On February 10, 2005, Ramashwar filed this § 1983 action against Officers Finnegan and Espinoza and various other defendants.  (<u>See</u> Dkt. No. 1: Compl.)  On June 27, 2005, Ramashwar stipulated to a voluntary dismissal with prejudice of his false arrest claim.  (Ramashwar & Defs. Rule 56.1 Stmt. ¶ 27; Scharfstein Aff. Ex. T: 6/27/05 Stip. & Order.)  On September 27, 2005, on the consent of Ramashwar's new counsel, the Court dismissed with prejudice all remaining claims against defendants except for the malicious prosecution claim.  (Ramashwar & Defs. Rule 56.1 Stmt. ¶ 28; Scharfstein Aff. Ex. Z: 9/27/05 Peck Order.)

---

[8/]    Ramashwar did not provide any excerpts from the second trial transcript.  Ramashwar's current counsel admitted at oral argument that he has never seen any of the second trial transcript.

## ANALYSIS

**I.** **SUMMARY JUDGMENT STANDARDS IN SECTION 1983 CASES**[9/]

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Lang v. Retirement Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). The movant may

---

[9/]    For additional decisions by this Judge discussing the summary judgment standards in Section 1983 cases, in language substantially similar to that in this entire section of this Opinion, see, e.g., Doe v. Goord, 04 Civ. 0570, 2005 WL 3116413 at *8-10 (S.D.N.Y. Nov. 22, 2005) (Peck, M.J.); Dawkins v. Jones, No. 03 Civ. 0068, 2005 WL 196537 at *9-10 (S.D.N.Y. Jan. 31, 2005) (Peck, M.J.); Hall v. Perilli, 03 Civ. 4635, 2004 WL 1068045 at *3 (S.D.N.Y. May 13, 2004) (Peck, M.J.); Baker v. Welch, 03 Civ. 2267, 2003 WL 22901051 at *4-6 (S.D.N.Y. Dec. 10, 2003) (Peck, M.J.); Muhammad v. Pico, 02 Civ. 1052, 2003 WL 21792158 at *10-11 (S.D.N.Y. Aug. 5, 2003) (Peck, M.J.) (citing prior Opinions); Carbonell v. Goord, 99 Civ. 3208, 2000 WL 760751 at *4 (S.D.N.Y. June 13, 2000) (Peck, M.J.); Greenfield v. City of New York, 99 Civ. 2330, 2000 WL 124992 at *3 (S.D.N.Y. Feb. 3, 2000) (Peck, M.J.); Salahuddin v. Coughlin, 999 F. Supp. 526, 534 (S.D.N.Y. 1998) (Rakoff, D.J. & Peck, M.J.); Watson v. McGinnis, 981 F. Supp. 815, 817 (S.D.N.Y. 1997) (Kaplan, D.J. & Peck, M.J.).

discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  Instead, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e);  accord, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356.

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513; see also, e.g., Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.  The Court draws all inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented.  See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. <u>See</u>, <u>e.g.</u>, <u>Donahue</u> v. <u>Windsor Locks Bd. of Fire Comm'rs</u>, 834 F.2d 54, 58 (2d Cir. 1987); <u>Knight</u> v. <u>United States Fire Ins. Co.</u>, 804 F.2d 9, 11 (2d Cir. 1986), <u>cert. denied</u>, 480 U.S. 932, 107 S. Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. <u>See</u>, <u>e.g.</u>, <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted." <u>Id</u>. at 248, 106 S. Ct. at 2510 (citations omitted); <u>see also</u>, <u>e.g.</u>, <u>Knight</u> v. <u>United States Fire Ins. Co.</u>, 804 F.2d at 11-12.

## II.    DEFENDANTS ARE GRANTED SUMMARY JUDGMENT ON RAMASHWAR'S § 1983 MALICIOUS PROSECUTION CLAIM

To prevail in a § 1983 action, a plaintiff must demonstrate that he has been denied a constitutional or federal statutory right and that the deprivation occurred under color of state law. <u>See</u> 42 U.S.C. § 1983; <u>West</u> v. <u>Atkins</u>, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988). "Section 1983 itself," however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." <u>Sykes</u> v. <u>James</u>, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted), <u>cert. denied</u>, 512 U.S. 1240, 114 S. Ct. 2749 (1994).

### A.  Legal Standard Governing Malicious Prosecution Claims

"The Second Circuit has held that '[f]reedom from malicious prosecution is a constitutional right that has long been clearly established.'"  Winn v. McQuillan, 390 F. Supp. 2d 385, 389-90 (S.D.N.Y. 2005) (quoting Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003)). "Claims for . . . malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for . . . malicious prosecution under [New York] state law." Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003); see also, e.g., Winn v. McQuillan, 390 F. Supp. 2d at 390; Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003).  To state a claim for malicious prosecution under New York law, the plaintiff must show:  (1) "the defendant initiated a criminal proceeding"; (2) the proceeding terminated in plaintiff's favor; (3) "there was no probable cause for the criminal charge"; and (4) the defendant acted maliciously.  Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004); accord, e.g., Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003); Savino v. City of New York, 331 F.3d at 72; Kinzer v. Jackson, 316 F.3d at 143; Jocks v. Tavernier, 316 F.3d at 136; Winn v. McQuillan, 390 F. Supp. 2d at 390.  New York law "'places a heavy burden on malicious prosecution plaintiffs. . . .'"  Rothstein v. Carriere, 373 F.3d at 282.  For a malicious prosecution claim to rise to a constitutional level under § 1983, there must also be a post-arraignment seizure.  Jocks v. Tavernier, 316 F.3d at 136; see also, e.g., Singer v. Fulton County Sheriff, 63 F.3d 110, 116-17 (2d Cir. 1995), cert. denied, 517 U.S. 1189, 116 S. Ct. 1676 (1996).

**B.  Ramashwar's Malicious Prosecution Claim Fails as a Matter of Law**

Here, it is undisputed that the first two elements of malicious prosecution are satisfied.  (See Dkt. No. 28: Defs. SJ Br. at 2.)  The defendants argue that no material issue of fact exists as to the third and fourth elements of Ramashwar's malicious prosecution claim: whether there was probable cause to prosecute Ramashwar and whether the officers acted with malice.  (Defs. Br. at 6-14.)

**i.  Probable Cause**

An indictment by a grand jury "'creates a presumption of probable cause'" to prosecute that defendant.  Rothstein v. Carriere, 373 F.3d 275, 282-83 (2d Cir. 2004); Boyd v. City of New York, 336 F.3d 72, 77 (2d Cir. 2003); Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003); Colon v. City of New York, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 (1983).  "'The presumption may be overcome only by evidence establishing that the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith.'"  Rothstein v. Carriere, 373 F.3d at 283 (quoting Colon v. City of New York, 60 N.Y.2d at 82-83, 468 N.Y.S.2d at 455-56); see also, e.g., Boyd v. City of New York, 336 F.3d at 77; Savino v. City of New York, 331 F.3d at 72.  Thus, in order for a plaintiff to prove a malicious prosecution claim after having been indicted, "'he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'"  Rothstein v. Carriere, 373 F.3d at 283 (quoting Colon v. City of New York, 60 N.Y.2d at 83, 468 N.Y.S.2d at

456); accord, e.g., Savino v. City of New York, 331 F.3d at 72. Alternatively, the presumption "'can be overcome by a showing by claimant that the conduct of the police deviated so egregiously from acceptable police activity as to demonstrate an intentional or reckless disregard for proper procedures.'" Williams v. City of New York, 02 Civ. 3693, 2003 WL 22434151 at *6 (S.D.N.Y. Oct. 23, 2003) (Motley, D.J.), aff'd, 120 Fed. Appx. 388 (2d Cir. Jan. 21, 2005).

Here, Ramashwar was indicted by a grand jury, and thus he must rebut the presumption that there was probable cause to prosecute him. Ramashwar contends that "the defendants falsely reported what they had seen. . . . and there is ample evidence to support . . . that both officers falsely reported seeing the plaintiff shooting the gun." (Dkt. No. 39: Ramashwar SJ Opp. Br. at 10.) Additionally, Ramashwar argues that the defendants "lied and reported having seen an incident transpire in a manner that they did not, and could not, possibly have seen." (Id. at 11.) However, Ramashwar does not allege, nor does he present evidence, that Officer Finnegan, who testified at the grand jury, testified any differently at trial (the first or second trial) than he did in the grand jury.[10] Officer Espinoza did not even testify before the Grand Jury. (See Ramashwar Rule

---

[10] The defendants argue that Ramashwar should be precluded from relying on Officer Finnegan's grand jury testimony because such testimony is secret under New York law unless and until Ramashwar obtained an order unsealing the testimony, which he has not done. (Dkt. No. 28: Defs. SJ Br. at 10 n.3.) Ramashwar has submitted excerpts of Officer Finnegan's grand jury testimony to the Court under seal. Since Ramashwar does not claim that Officer Finnegan testified differently in the grand jury than at trial, there is not need for this Court to consider the propriety of unsealing Officer Finnegan's grand jury minutes (or granting Ramashwar leave to seek such an order from the state court) because Ramashwar has not put the officer's words at issue. His claim is that his version of events, as corroborated by his witnesses, should be believed above the State's version of events as

(continued...)

56.1 Stmt. ¶ 31.) Ramashwar must present more than "'mere 'conjecture' and 'surmise' that his indictment was procured as a result of conduct undertaken by the defendants in bad faith'" to rebut the presumption. <u>Reid</u> v. <u>City of New York</u>, 00 Civ. 5164, 2004 WL 626228 at *7 (S.D.N.Y. Mar. 29, 2004) (quoting <u>Savino</u> v. <u>City of New York</u>, 331 F.3d 63, 72 (2d Cir. 2003)), <u>report & rec. adopted</u>, 2004 WL 1488194 (S.D.N.Y. July 1, 2004); <u>see also</u> <u>Simmons</u> v. <u>New York City Police Dep't</u>, No. 03-7464, 97 Fed. Appx. 341, 343 (2d Cir. Apr. 29, 2004) ("Although [plaintiff] testified that the arresting officer . . . told him that the officers would falsify evidence and manipulate line-ups in order to implicate him, this allegation is not, without more, sufficient to raise an inference that the indictment was procured by fraud or bad faith conduct."); <u>Scully</u> v. <u>City of Watertown</u>, No. 7:03 CV 846, 2005 WL 1244838 at *11 (N.D.N.Y. May 25, 2005) ("The simple assertion that [plaintiff] was acquitted and therefore the officers must have lied is insufficient to overcome the presumption created by the grand jury's indictment. . ."); <u>Montes</u> v. <u>King</u>, 00 Civ. 4707, 2002 WL 1808209 at *3 n.5 (S.D.N.Y. Aug. 6, 2002) ("[U]nsubstantiated speculation" that officer acted in bad faith is not enough to survive summary judgment.); <u>Jenkins</u> v. <u>City of New York</u>, 98 Civ. 7170, 98 Civ. 7338, 1999 WL 782519 at *9, 11 (S.D.N.Y. Sept. 30, 1999) (despite later-discovered perjury by a civilian witness at the grand jury, plaintiff "failed to produce any evidence of intentional police misconduct

---

<u>10</u>/   (...continued)
corroborated by the defendants and civilian witnesses.

In order to ensure that granting summary judgment here is not a miscarriage of justice, the Court has reviewed the sealed excerpts of Officer Finnegan's grand jury testimony which Ramashwar provided. Due to the sealed nature of this testimony, the Court makes no comment on these excerpts, except to say they do not change the Court's decision.

and his allegations are contradicted by the affidavits and contemporaneous documentary record in support of the motion.  [Plaintiff] has thus failed to rebut the presumption that probable cause to commence the proceeding existed."), aff'd, 216 F.3d 1072 (2d Cir. 2000).

Ramashwar's argument proves merely that there were two versions of the incident – (1) Ramashwar's and his witnesses, and (2) the prosecution's and its witnesses including the defendant police officers.  Conflicting testimony between witnesses at the criminal trial is not enough to rebut the presumption of probable cause.  See, e.g., Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 422 (S.D.N.Y. 2002) ("The record is barren of evidence (as opposed to conclusory allegations) to overcome the presumption created by the indictment. [Plaintiff] asserts that [the defendant officer] perjured himself, but that conclusory allegation is insufficient to overcome this strong presumption. . . .[Moreover,] '[t]he existence of a "swearing contest" between plaintiff as to his innocence and an eye-witness as to the events "cannot of itself render the issue of probable cause a jury question."'"); DiMascio v. City of Albany, No. 93-CV-0452, 1999 WL 244648 at *3 (N.D.N.Y. Apr. 21, 1999) (contradictions between plaintiff's and defendant's trial testimony "is insufficient to give rise to an inference of fraud, perjury or the withholding of evidence and is probative of little more than a disagreement over the turn of events" on the date of plaintiff's arrest. "A mere conflict between witness' trial testimony alone is insufficient to suggest fraud, perjury or the withholding of evidence."), aff'd, 205 F.3d 1322 (2d Cir. 2000); Hathaway v. County of Essex, 995 F. Supp. 62, 69 (N.D.N.Y. 1998) ("Reliance on variations in testimony . . . as evidence of fraud, suppression of evidence, or perjury [is] insufficient to overcome the presumption of probable

cause."), aff'd, 172 F.3d 37 (2d Cir.), cert. denied, 528 U.S. 894, 120 S. Ct. 222 (1999); see also, e.g., Colon v. City of New York, 60 N.Y.2d at 83, 468 N.Y.S.2d at 456 (Police's "failure to pursue the investigation is not the equivalent of fraud or the suppression of evidence. Nor do variations in the witnesses' testimony prove perjury. Rather, they appear to indicate only the witnesses' differing perceptions of the incidents they observed."); compare, e.g., Cipolla v. County of Rensselaer, 129 F. Supp. 2d 436, 454 (N.D.N.Y. 2001) (noting that "[a]lthough conflicting testimony is a routine part of the litigation process and, without more, cannot rebut the presumption of probable cause, . . . here Plaintiffs do not only allege that the testimony of the individual witnesses conflicted, but also that [witnesses] testified to facts before the grand jury that were inconsistent with statements they made prior to and/or after the grand jury proceedings."), aff'd, 20 Fed. Appx. 84 (2d Cir. Oct. 11, 2001).

There is no evidence that the police did not see what they testified to have seen other than Ramashwar's say-so in the pages of his brief. It is not implausible, as a matter of law, that Officers Finnegan and Espinoza witnessed the events to which they testified. The mere fact that Ramashwar's version of events contradicts that of the officers is not enough to present an issue of fact as to the probable cause element of Ramashwar's malicious prosecution claim. (See cases cited at pages 20-21 above.)[11/] If it were, any time there were conflicting versions of an incident and the

---

[11/]  Ramashwar asserts in his Rule 56.1 Statment that the NYPD "misbehav[ed]" when Officer Finnegan showed complaining witness Dennis Brown a photo array that included only one person and then did not tell the ADA about this identification procedure. (Ramshwar Rule 56.1 Stmt. ¶ 12.) Ramashwar mentions this point again in one paragraph of his brief under the heading: "Defendants' Actions Tainted a Witness." (Ramashwar Br. at 19.)

(continued...)

criminal trial resulted in a not guilty verdict, the arresting officers could be sued for malicious prosecution, despite a grand jury's finding of probable cause. That is not the state of the law, nor should it be.

### ii. **Malice**

Even if Ramashwar could survive summary judgment by raising facts sufficient to rebut the presumption of probable cause (which he has not), summary judgment for defendants still would be appropriate because Ramashwar has failed the fourth prong – malice – as well. "Under New York law, malice does not have to be actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996); see also, e.g., Llerando-Phipps v. City of New York, 390 F. Supp. 2d 372, 383 (S.D.N.Y. 2005); Davis v. City of New York, 373 F. Supp. 2d 322, 335 (S.D.N.Y. 2005); Wray v.

---

11/ (...continued)
Ramashwar seems to be implying an argument that the bottle-assault charge involving Dennis Brown was not supported by probable cause, notwithstanding the charges involving the gun and Jimmy Perez, Sr. However, Ramashwar makes no actual argument to this effect and his complaint references only the defendants' "false" testimony that they saw Ramashwar with a gun. (Compl. ¶ 12.)

Where, as here, a plaintiff is represented by counsel, this Court will not infer arguments that have not been expressly made. See, e.g., Larrea v. Bennett, 01 Civ. 5813, 2002 WL 1173564 at *12 (S.D.N.Y. May 31, 2002) (Peck, M.J.), report & rec. adopted, 2002 WL 1808211 (S.D.N.Y. Aug. 6, 2002), aff'd, 368 F.3d 179 (2d Cir. 2004). Since the complaint did not set forth factual allegations relating to this issue, the defendants could not undertake discovery on the subject and since the excerpt of the trial transcript Ramashwar submitted does not indicate whether there was even a ruling at trial to exclude the evidence, the issue is not properly before the Court on this summary judgment motion.

City of New York, 340 F. Supp. 2d 291, 302 (E.D.N.Y. 2004); Williams v. City of New York, 02 Civ. 3693, 2003 WL 22434151 at *8 (S.D.N.Y. Oct. 23, 2003) (Motley, D.J.), aff'd, 120 Fed. Appx. 388 (2d Cir. Jan. 21, 2005). "[T]here must be a showing of some deliberate act punctuated with awareness of conscious falsity to establish malice." Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 423 (S.D.N.Y. 2002) (internal quotations omitted). Malice need not be shown through "direct evidence of an ulterior motive" but rather "is usually inferred from the facts and circumstances of the investigation." Davis v. City of New York, 373 F. Supp. 2d at 335. A lack of probable cause generally creates an inference of malice. Boyd v. City of New York, 336 F.3d 72, 78 (2d Cir. 2003) (citing Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 131 (2d Cir. 1997)).

Here, Ramashwar contends that malice can be inferred from the officers' failure to canvass for witnesses, disregarding Lela Ramashwar and relying on Jimmy Perez, Sr., an employee of the NYPD, to provide them with the "story" that the defendants then adopted and testified to without personal knowledge of those facts. (Dkt. No. 39: Ramashwar SJ Opp. Br. at 23.)[12] Ramashwar's theory is that the defendants arrived on the scene before the shots were fired but did not get out of their car until after the gunfire had stopped and, in order to save themselves from having to report their own delayed reaction to their supervisor, lied about seeing Ramashwar with the gun when, in fact, they could not have seen who had the gun because of the crowd of people.

---

[12] Ramashwar does not mean to argue that negligent investigation amounts to malice. (Id.) See, e.g., Santiago v. City of Rochester, 19 A.D.3d 1061, 1061, 796 N.Y.S.2d 811, 812 (4th Dep't) ("There is no cause of action in New York for negligent investigation of [a] crime."), appeal denied, 5 N.Y.3d 710, 804 N.Y.S.2d 35 (2005).

(Ramashwar SJ Opp. Br. at 10-11.)  Ramashwar's only evidence to support this version of the facts

is Lela Raghuber's testimony that she saw the police car arrive before the first shot was fired.  (Id.

at 11.)  All other testimony at trial, however, described the police car arriving right as the first shot

was fired.  (See pages 7-8 above.)

If anything, this testimony tends to show that the defendants did in fact see what they

testified to have seen.  Again, Ramashwar has made a bald assertion.  Even if Ramashwar's version

of events at the time of the arrest were true, the officers' reliance on the putative victim's (Jimmy

Perez, Sr.) account coupled with their observation of Ramashwar holding, then dropping, the gun

upon their approach provided a reasonable basis for probable cause and thus cannot form the basis

of a showing of malice.  Once "a police officer has a reasonable basis for believing there is probable

cause [to arrest], he is not required to explore and eliminate every theoretically plausible claim of

innocence before making an arrest."  Ricciuti v. N.Y.C. Transit Auth., 124 F.3d at 128 (denying

summary judgment on false arrest claim where arresting officer had probable cause to arrest plaintiff

because the version of events relayed by one of the parties to the incident was plausible

notwithstanding plaintiff's protestations of innocence and "his credibility was buttressed by the fact

that he identified himself [as] a law enforcement officer."); accord, e.g., Curley v. Village of Suffern,

268 F.3d 65, 70 (2d Cir. 2001) ("[W]e have found probable cause where a police officer was

presented with different stories from an alleged victim and the arrestee. . . . Although a better

procedure may have been for the officers to investigate plaintiff's version of events more completely,

the arresting officer does not have to prove plaintiff's version wrong before arresting him.");

Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) ("[P]olice officers, when making a probable cause determination, are entitled to rely on the victims' allegations that a crime has been committed."); Universal Calvary Church v. City of New York, 96 Civ. 4606 et. al, 2000 WL 1538019 at *5-7 & n.11, *11 (S.D.N.Y. Oct. 17, 2000); Dukes v. City of New York, 879 F. Supp. 335, 343-44 (S.D.N.Y. 1995) (Defendant police officer "was not required to conduct an investigation that focused where plaintiff and his parents chose. . . . Police officers need not conduct an investigation which exculpates an arrestee. . . . The Court . . . finds unpersuasive plaintiff's claim that actual malice can be inferred from [the police officer's] refusal to interview the witnesses produced by his father in the hours following his arrest.").

Moreover, Ramashwar's bald assertion that the defendant officers maliciously gave unwarranted credence to Perez, Sr.'s version of events because he is a civilian employee of the NYPD is unsupported and insufficient to raise an inference of malice. See, e.g., Universal Calvary Church v. City of New York, 2000 WL 1538019 at *7 ("Plaintiff's unsupported allegation that [the victim/complainant] received special treatment from the Defendants because he was a retired police officer is speculation and is insufficient to establish that [the defendant officer] acted in bad faith."); see Ricciuti v. N.Y.C. Transit Auth., 124 F.3d at 128. The Court notes that plaintiff's original counsel took the depositions of Officers Finnegan and Espinoza in this case, but (as plaintiff's present counsel conceded at oral argument) discovered no evidence to advance plaintiff's case. Without any evidence that any of Officer Finnegan's and Officer Espinoza's actions were motivated by malice, Ramashwar's claim must fail at the summary judgment stage on the fourth prong, malice.

See, e.g., Williams v. City of New York, 2003 WL 22434151 at *8; Brogdon v. City of New Rochelle, 200 F. Supp. 2d at 423.

## CONCLUSION

For the reasons discussed above, defendants are granted summary judgment and the case is dismissed. The Court will issue a separate opinion dealing with defendants' motion for Rule 11 sanctions against plaintiff's former counsel.

SO ORDERED.

Dated:       New York, New York
              January 5, 2006

**Andrew J. Peck**
United States Chief Magistrate Judge

Copies to:      Fred Lichtmacher, Esq.
                Thomas Sheehan, Esq.
                Susan P. Scharfstein, Esq.