UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TIKAPERSAUD RAMASHWAR,                    :

           Plaintiff,         :

      -against-                          :

                               :

POLICE OFFICER OTTO ESPINOZA &
POLICE OFFICER VINCENT FINNEGAN,          :

           Defendants.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

05 Civ. 2021 (AJP)

**<u>OPINION AND ORDER</u>**

**ANDREW J. PECK, United States Magistrate Judge:**

        After moving for summary judgment, defendants also moved for sanctions against plaintiff Tikapersaud Ramashwar's former counsel, Thomas G. Sheehan, Esq. and Doric Sam, Esq., pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's inherent power to supervise its docket. (Dkt. No. 24: Defs. Notice of Sanctions Motion.) Defendants seek sanctions against Sheehan on the grounds that he (1) "fail[ed] to investigate the allegations of the complaint before bringing suit" and (2) "fail[ed] and refus[ed] to withdraw plaintiff's claims after he knew or should have known that plaintiff's claims were not viable." (Dkt. No. 30: Defs. Sanctions Br. at 1.) Defendants claim Sam is "jointly responsible for any penalty imposed by this Court, as he participated in the prosecution of this lawsuit. . . ." (<u>Id</u>.)

Defendants have requested $26,063.10 in attorneys' fees and $3,708.00 in costs. (Dkt. No. 48: 12/12/05 Scharfstein Aff. ¶¶ 3, 9.)

For the reasons set forth below, defendants' motion is DENIED as against Sam and GRANTED in part and DENIED in part as against Sheehan; the Court awards defendants $3,000 in Rule 11 sanctions against Sheehan.

## FACTS

The underlying facts of this case are set forth in the Court's Opinion and Order granting defendants summary judgment on plaintiff's malicious prosecution claim and dismissing Ramaswhar's case in its entirety, and will not be repeated here. See Ramashwar v. Espinoza, 05 Civ. 2021, 2006 WL 23481 (S.D.N.Y. Jan. 5, 2006) (Peck, M.J.).

On February 10, 2005, Sheehan signed and filed Ramashwar's complaint alleging various constitutional torts under 28 U.S.C. § 1983. (See Dkt. No. 1: Compl.) According to Sheehan, at the time he commenced the action, he had reviewed the grand jury minutes and first trial transcript from Ramashwar's criminal case, as well as "police reports, prosecution reports, interviews with the plaintiff and conversations with [Ramashwar's] criminal defense attorney Todd Greenberg." (Dkt. No. 35: Sheehan Aff. ¶ 3.)

On June 21, 2005, defendants sent Sheehan a Rule 11 "safe harbor" letter, informing Sheehan of their intention to move for sanctions if Sheehan did not withdraw the lawsuit. (Dkt. No. 26: 10/3/05 Scharfstein Aff. Ex. R: 6/21/05 Scharfstein Safe Harbor Letter to Sheehan.) Defendants pointed to the malicious prosecution claim along with the "derivative" claims alleged in the

complaint, i.e., "failure to intervene, conspiracy and Monell [municipal] liability."  (Id. at 2-3.)

Sheehan never responded to this letter.

On June 27, 2005, the parties stipulated to an order dismissing Ramashwar's false

arrest claim.  (10/3/05 Scharfstein Aff. Ex. T: 6/27/05 Stip. & Peck Order.)  At the court conference

discussing this issue, Sam appeared on Ramashwar's behalf.  (See generally Dkt. No. 9: 6/27/05 Peck

Conf. Tr.)

On August 10, 2005, the Court granted defendants' request that Ramashwar be

precluded from offering evidence as to any damages reflected in documents that had not yet been

produced in light of a previous Court order requiring Ramshwar to have produced such documents

by July 27.  (Dkt. No. 12: 8/11/05 Peck Memo Endorsed Order.)

On August 15, 2005, the discovery period closed.  (Dkt. No. 4: Judge Wood Sched.

Order; Dkt. No. 5: Rule 26(f) Disc. Plan; Dkt. No. 9: 6/27/05 Peck Conf. Tr. at 2.)

Also on August 15, Sheehan was suspended from the practice of law in New York

State.  (8/31/05 Sheehan Letter.)  Sheehan was suspended from practice in the Southern District

effective September 15, 2005.  (8/22/05 Order.)

On August 17, 2005, after receiving no response to their "safe harbor" letter and no

discovery to support Ramashwar's claims – Sheehan had not sought testimony during the depositions

of the defendant police officers concerning the grand jury proceedings and had not taken any

discovery relating to the "derivative" claims (10/3/05 Scharfstein Aff. Ex. V: 8/17/05 Scharfstein

Letter at 3-4 & n.2) –  defendants requested a pre-motion conference to address their proposed

motion for summary judgment in an attempt "to avoid costly and unnecessary motion practice." (Id. at 4.)

On September 6, 2005, Sheehan failed to appear for that conference; the Court sanctioned him $500 and ordered him to reimburse defendants the cost of the conference transcript.[1] (10/3/05 Scharfstein Aff. Ex. X: 9/6/05 Peck Order, & Ex. W: 9/6/05 Peck Conf. Tr. at 12.) The Court also observed that Sam, as an associate of Sheehan's who had appeared at prior conferences, still represented Ramashwar until such time as he requested leave to withdraw. (9/6/05 Peck Order.)

On September 26, 2005, Ramashwar's new counsel, Fred Lichtmacher, Esq., filed his notice of appearance. (Dkt. No. 18: Notice of Appearance.) On September 27, defendants served a "safe harbor" letter on Lichtmacher. (Dkt. No. 46: Scharfstein SJ Reply Aff. Ex. R: 9/27/05 Scharfstein Safe Harbor Letter to Lichtmacher.) Later that day, on Lichtmacher's consent, all claims except for Ramashwar's malicious prosecution claim were dismissed with prejudice. (Dkt. No. 19: 9/27/05 Peck Order; accord, 10/3/05 Scharfstein Aff. Ex. Z: 9/27/05 Peck Order.)

## ANALYSIS

## I.    SHEEHAN VIOLATED RULE 11 BY PLEADING FRIVOLOUS "DERIVATIVE" CLAIMS IN THE COMPLAINT

### A.    The Legal Standard Governing Rule 11

Rule 11 of the Federal Rules of Civil Procedure provides in pertinent part:

---

[1]    Even though Sheehan had been suspended from the practice of law in New York State, he had not yet been suspended from practice in the Southern District, as noted above, and had been notified to and was expected to appear at the scheduled conference.

(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –
. . .

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

As a threshold matter, for Rule 11 to apply there must be a signed pleading, motion or other paper that has been filed with the Court. United States v. International Bhd. of Teamsters, 948 F.2d 1338, 1344 (2d Cir. 1991); see Fed. R. Civ. P. 11, 1993 Advisory Comm. Note.

"In deciding whether the signer of a pleading, motion, or other paper has crossed the line between zealous advocacy and plain pettifoggery, the court applies an objective standard of reasonableness." United States v. International Bhd. of Teamsters, 948 F.2d at 1344; accord, e.g., Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc., 28 F.3d 259, 265 (2d Cir. 1994); Storey v. Cello Holdings L.L.C., 347 F.3d 370, 387 (2d Cir. 2003) ("'[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness,' and is not based on the subjective beliefs of the person making the statement.") (citation omitted). "Rule 11 sanctions are an extreme remedy, such that '[w]hen divining the point at which an argument turns from merely losing to losing and sanctionable . . . district courts [must] resolve all doubts in favor of the signer.'" United States Fire Ins. Co. v. United Limousine Serv., Inc., 303 F. Supp. 2d 432, 455 (S.D.N.Y. 2004).

"Merely incorrect legal statements are not sanctionable under Rule 11(b)(2). Rather sanctionable 'legal contentions' must not be 'warranted by existing law or by a nonfrivolous argument'" for a change in the law. Storey v. Cello Holdings, L.L.C., 347 F.3d at 391; see, e.g., Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc., 28 F.3d at 265 ("An argument constitutes a frivolous legal position . . . if, under an 'objective standard of reasonableness,' it is 'clear . . . that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands.'") (citations omitted).[2/]  The 1993 Advisory Committee Notes explain that Rule 11(b)(2) "establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments."

 Courts determine whether a Rule 11 violation has occurred by "focusing on the situation existing when the paper was signed. . . . The Court must not allow hindsight to skew its judgment." United States v. International Bhd. of Teamsters, 948 F.2d at 1344; accord, e.g., Storey v. Cello Holdings, L.L.C., 347 F.3d at 391; Rubio v. City of New York, No. 03-CV-1349, 2005 WL 1498283 at *1 (E.D.N.Y. May 31, 2005) (Sheehan sanctions case).

The complaint is not analyzed as an "indivisible unit" but rather "claims are analyzed individually." Perez v. Comitatus, 373 F.3d 321, 325 (2d Cir. 2004).

---

[2/]    "The extent to which a litigant has researched the issues and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account in determining whether paragraph (2) has been violated." Fed. R. Civ. P. 11, 1993 Advisory Comm. Notes.

"[I]f evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention." Fed. R. Civ. P. 11, 1993 Advisory Comm. Notes.

### B. Sheehan Violated Rule 11 By Alleging Frivolous "Derivative" Claims in the Complaint

Defendants point to the complaint signed by Sheehan as the operative document for Rule 11 analysis. (Dkt. No. 30: Defs. Sanctions Br. at 8.) Defendants claim that Sheehan violated Rule 11(b)(2) by advancing claims that were "lacking in evidentiary support based on the governing law." (Defs. Sanctions Br. at 8.)

#### 1. Malicious Prosecution Claim

Defendants argue that Sheehan knew or should have known that, because Ramashwar had been indicted by a grand jury, he would have to prove perjury, fraud or other misconduct by defendant Officers Finnegan and Espinoza in the grand jury in order to succeed on a malicious prosecution claim, and that Sheehan knew or should have known at the time of filing the complaint that there was no evidence of such misconduct. (Dkt. No. 30: Defs. Sanctions Br. at 8-9.)

It is well-settled that for a malicious prosecution claim, an indictment by a grand jury creates a presumption of probable cause to prosecute that defendant. Rothstein v. Carriere, 373 F.3d 275, 282-83 (2d Cir. 2004); Boyd v. City of New York, 336 F.3d 72, 77 (2d Cir. 2003); Colon v. City of New York, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 (1983); see Ramashwar v. Espinoza, 05 Civ. 2021, 2006 WL 23481 at *7-8 (S.D.N.Y. Jan. 5, 2006) (Peck, M.J.). "'The presumption may be overcome only by evidence establishing that the police witnesses have not made a complete and

full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith.'" <u>Rothstein</u> v. <u>Carriere</u>, 373 F.3d at 283 (quoting <u>Colon</u> v. <u>City of New York</u>, 60 N.Y.2d at 82-83, 468 N.Y.S.2d at 455-56).

Sheehan contends that when he signed the complaint, he understood the prevailing Second Circuit law to support Ramashwar's claim that the defendant police officers lied when they testified that Ramashwar was the one who shot the gun into the crowd. (Dkt. No. 33: Sheehan Br. at 1.) Specifically, Sheehan states that he relied on <u>Jocks</u> v. <u>Tavernier</u>, 316 F.3d 128 (2d Cir. 2003), as support for the claim. (Sheehan Br. at 1.)[3/] <u>Jocks</u> involved a case where there was documentary evidence – a written confession – used in the criminal prosecution of the plaintiff which the plaintiff claimed had been falsified by the defendant police officer. <u>See</u> <u>Jocks</u> v. <u>Tavernier</u>, 316 F.3d at 138. Essentially, <u>Jocks</u> holds that a plaintiff's word against a defendant police officer's word as to whether a written confession was falsified gives rise to a triable issue of fact in a malicious prosecution claim.

---

[3/]     In <u>Jocks</u>, the Second Circuit reversed the district court's dismissal after plaintiff's case of plaintiff's malicious prosecution claim against one of the defendant police officers. <u>Jocks</u> v. <u>Tavernier</u>, 316 F.3d at 138. Jocks had testified that the police officer recorded a statement he made but falsified it to make the facts favorable to the police. <u>Id</u>. at 138. Jocks refused to sign the statement because it contained false information that Jocks claims not to have said; on the other hand, the police officer testified that Jocks made the statement before being given his <u>Miranda</u> rights and that he recorded the statement verbatim. <u>Id</u>. It was undisputed that the statement was passed on to the prosecutor. <u>Id</u>. The Second Circuit in <u>Jocks</u> concluded that, although there was not "overwhelming evidence of falsification," a reasonable jury could credit Jocks's testimony and reject the police officer's, and thus remanded for a new trial. <u>Id</u>.

At the time Sheehan filed the complaint, he had spoken with Ramashwar's criminal defense attorney and had reviewed the grand jury minutes, the criminal trial transcript, and the police and prosecution reports. (See page 2 above.) Sheehan claims that after reviewing these documents, he concluded that the jury at Ramashwar's first criminal trial had credited only the testimony of the defendant police officers and not the testimony of Ramashwar's witnesses. (Dkt. No. 35: Sheehan Aff. ¶ 5.) Sheehan further determined that because the officers had not taken the statement of witnesses favorable to Ramashwar, it was reasonable to infer that the officers had "favored the civilian complain[an]t Jimmy Perez and his family member and friends," possibly because Perez was a civilian employee of the Police Department. (Id.)

At the complaint stage, a reasonable attorney, relying on Jocks, could have believed that discovery – particularly, depositions of the defendant officers, see Uy v. Bronx Mun. Hosp. Ctr., 182 F.3d 152, 156 (2d Cir. 1999) ("As a practical matter, in the usual case, the only way the attorney can discover what adverse witnesses will say is by taking their deposition.") – would produce evidence sufficient to create a triable issue of fact as to whether the officers acted in bad faith or lied in the grand jury sufficient to rebut the presumption of probable cause. The fact that discovery did not yield any evidence of perjury, fraud or misconduct by the defendant police officers provided the basis to grant defendants' summary judgment motion. But, "[t]hat summary judgment is rendered against a party does not necessarily mean . . . that it had no evidentiary support for its position." Fed. R. Civ. P. 11, 1993 Advisory Comm. Notes.

It appears that Sheehan engaged in some investigation of the facts and the law and the Court does not conclude that the malicious prosecution claim was "utterly lacking in support" at the time Sheehan signed the complaint. See Storey v. Cello Holdings L.L.C., 347 F.3d 370, 388 (2d Cir. 2003). Advancing the malicious prosecution claim at the pleading stage was not a violation under Rule 11.

### 2. "Derivative" Federal Claims

Ramashwar's municipal liability claim pursuant to Monell v. Department of Social Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978), was based on the single incident involving the defendant officers' alleged false testimony about Ramashwar. (See Dkt. No. 1: Compl. ¶ 12.) Sheehan claims that he believed it to be a custom and policy of the New York Police Department to "protect fellow police officers. . . . and fellow employees of the police department." (Dkt. No. 35: Sheehan Aff. ¶ 7.) The closest the complaint comes to alleging such a custom and policy is that the City has been "deliberately indifferent to the needs of police officers who witness or have information regarding police misconduct." (Compl. ¶ 37; see also Compl. ¶ 30.)

It is well-settled within this Circuit that a "'single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy.'" Ulysses I & Co. v. Morton, No. 00-9189, 11 Fed. Appx. 14, 16 (2d Cir. Apr. 18, 2001), cert. denied, 534 U.S. 992, 122 S. Ct. 458 (2001); accord, e.g., Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993); Powell v. Gardner, 891 F.2d 1039, 1045 (2d Cir 1989); McAllister v. New York City Police Dep't, 49 F. Supp. 2d 688, 706

(S.D.N.Y. 1999) (Wood, D.J. & Peck, M.J.).  "'The inference that such a policy existed may arise from "circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction."'" Pugh v. City of New York, No. 01 CV 0129, 2002 WL 398804 at *2 (E.D.N.Y. Jan. 15, 2002) (quoting Dwares v. City of New York, 985 F.2d at 100).  However, the "'mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.'"  Pugh v. City of New York, 2002 WL 398804 at *2-3 (quoting Dwares v. City of New York, 985 F.2d at 100).

Here, the complaint contains bald assertions, without any supporting factual allegations. (See Compl. ¶¶ 28-30.)  Indeed, the complaint appears to be a "recycled" version of complaints filed by Sheehan in other § 1983 actions,  as evidenced by the fact that, in one paragraph, the wrong plaintiff's name is used.  (Compl. ¶ 26: "[P]laintiff Jose Duran has been damaged . . .")

It was not reasonable for Sheehan to have advanced the Monell claim against New York City based on a single incident without any factual allegations of a municipal policy.  See, e.g., Dwares v. City of New York, 985 F.2d at 101 (affirming district court's dismissal of Monell claim because "[t]he complaint did not allege any facts, other than the police officers' inaction in the instance complained of, to suggest that there existed such a custom or policy of failure to train.").  Moreover, once Sheehan received the "safe harbor" letter, by which point Sheehan had not conducted any discovery to prove a Monell claim, Sheehan should have withdrawn the Monell claim. (See page 7 above, quoting Fed. R. Civ. P. 11, 1993 Advisory Comm. Notes; see also, e.g., Dkt. No.

30: Defs. Sanctions Br. Ex. A: <u>Johnson</u> v. <u>City of New York</u>, No. 02 CV 4603 (E.D.N.Y. Apr. 6, 2004) Order at 7: "Mr. Sheehan's conduct in advancing the <u>Monell</u> claim against the City based upon only one alleged incident was not reasonable. It was not reasonable to include the claim when he first filed the lawsuit, and it was not reasonable to fail to withdraw the claim after the safe harbor letter." ) The <u>Monell</u> claim thus is a basis for imposing Rule 11 sanctions on Sheehan.

As for the "derivative" claims for conspiracy, failure to intervene and intentional infliction of emotional distress, Sheehan's failure to withdraw these claims after receiving the "safe harbor" letter, when he had conducted no discovery to support them, makes Rule 11 sanctions appropriate.

Defendants claim that Sheehan asserted a baseless excessive force claim without obtaining Ramashwar's medical records first. (Dkt. No. 30: Defs. Sanctions Br. at 9-10.) Sheehan responds that the complaint did not assert an excessive force claim. (Dkt. No. 33: Sheehan Br. at 2.) Sheehan is correct that no excessive force claim was alleged in the complaint. (<u>See</u> <u>generally</u> Dkt. No. 1: Compl.) The defendants point to Ramashwar's second amended discovery responses which were signed by Sheehan, as the relevant document. (Defs. Sanctions Br. at 8 n.3; <u>see</u> Dkt. No. 26: 10/3/05 Scharfstein Aff. Ex. M: 7/27/05 2d Am. Disc. Resp. Nos. 4, 6.) While the second amended responses indicated that Ramashwar had been injured on the day of the arrest and claimed he went to a hospital for treatment, that information does not amount to the assertion of an excessive force claim when none was asserted in the complaint. Moreover, to be susceptible to Rule 11 sanctions, a document must have been filed with the court. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>International</u>

Bhd. of Teamsters, 948 F.2d 1338, 1344 (2d Cir. 1991). The discovery responses were not filed with the Court. Rule 11 sanctions are not appropriate on this issue.

### 3. State Law Claims

Finally, Sheehan claims that, contrary to defendants' contention, he made no state law claims. (Sheehan Br. at 2; see Defs. Sanctions Br. at 13; Dkt. No. 42: Defs. Sanctions Reply Br. at 6.) However, as defendants correctly point out, the complaint alleges that Ramashwar's claims arose, inter alia, under the laws of the State of New York. (See Compl. ¶¶ 2, 8, 40.)

Pursuant to New York law, a plaintiff bringing a tort claim against the City or its officers must file a notice of claim within 90 days of the event upon which the claim is based, and must commence the action within one year and 90 days from the date the cause of action accrues. N.Y. Gen. Mun. Law §§ 50-e, 50(1)(a); see, e.g., Smith v. City of New York, 388 F. Supp. 2d 179, 184 (S.D.N.Y. 2005); DeCristo v. City of New York, 03 Civ. 1819, 2004 WL 1176572 at *1 (S.D.N.Y. May 26, 2004). Here, Sheehan did not file a notice of claim (or at least the record does not reflect any such filing), which clearly renders any state law claim fatally defective. See, e.g., Alicea v. City of New York, 04 Civ. 1243, 2005 WL 3071274 at *7 (S.D.N.Y. Nov. 15, 2005) (Sheehan Case – holding that failure to allege or establish that plaintiff filed the requisite notice of claim within the 90-day period requires dismissal of plaintiff's pendent state law claims); Jackson v. City of New York, 01 Civ. 10116, 2005 WL 1538205 at *5 (S.D.N.Y. June 29, 2005) (Sheehan case – "'A plaintiff's failure to file a notice of claim requires dismissal of pendent state tort claims against the City or its employees in a federal civil rights action such as this one.'").

Indeed, despite the plain language of the complaint, Sheehan apparently did not even know he had alleged claims arising under state law. The state law claims, however, did not require defendants to do any additional discovery than was necessary for the § 1983 claims. Nevertheless, Sheehan clearly brought the state law claims without any reasonable investigation of the law and facts in violation of Rule 11.

**C.**     **The Remedy for Sheehan's Rule 11 Violations**

Once the court determines that Rule 11 has been violated, it "may . . . impose an appropriate sanction upon the attorneys . . . responsible for the violation," which may be nonmonetary or monetary in nature. Fed. R. Civ. P. 11(c) (emphasis added). The decision whether to impose sanctions for a Rule 11 violation, and to what extent, is within the Court's discretion. Perez v. Comitatus, 373 F.3d 321, 325 (2d Cir. 2004) (citing, inter alia, Rule 11(c) & 1993 Advisory Comm. Notes.)

Rule 11(c)(2) provides that a "sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct." A court may direct payment of the moving party's attorneys' fees and expenses "incurred as a direct result of the violation" if "warranted for effective deterrence." Id.

The Second Circuit has recognized that there is a difference between pleading a groundless claim among non-frivolous claims and bringing a "wholly unwarranted lawsuit." Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc., 186 F.3d 157, 177 (2d Cir. 1999). The former situation is "typically, more of an inconvenience than a catastrophe – both for the opposing

party who must merely demonstrate why the claim is not viable, and for the court that must so decide." Id. Thus, a court might, in the exercise of its discretion, refrain from sanctioning a plaintiff for filing a complaint containing, amongst viable claims, a baseless one. Id.

To determine the appropriate form and amount of sanctions, the 1993 Advisory Committee Notes to Rule 11 provide a non-exhaustive list of factors to consider:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; . . . what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants. . . .

Here, Sheehan has not only been sanctioned in the past for filing frivolous § 1983 claims, but specifically he has been sanctioned for filing Monell claims based on a single incident and/or for failing to allege sufficient facts to state the Monell claim. See, e.g., Rubio v. City of New York, No. 03-CV-1349, 2005 WL 1498283 at *3 n.5 (E.D.N.Y. May 31, 2005). (See also, e.g., Dkt. No. 30: Defs. Sanctions Br. Ex. A: Johnson v. City of New York, No. 02 CV 4603, Order (E.D.N.Y. Apr. 6, 2004).) Moreover, in addition to the cases sanctioning Sheehan, he has been the attorney of record in cases in which summary judgment was granted on the Monell claim because he had alleged only a single incident. See generally, e.g., Payne v. County of Nassau, No. 03-CV-1929, 2005 WL 2179419 at •3-4 (E.D.N.Y. Sept. 9, 2005); Bartlett v. City of New York, No. CV 03-1961, 2005 WL 887112 at *4, *11 (E.D.N.Y. Feb. 11, 2005); Reyes v. City of New York, 99 Civ. 11994, 2001 WL 274129 at *3-5 (S.D.N.Y. Mar. 20, 2001). Further, defendants also outline numerous

instances in which Sheehan has been sanctioned, to demonstrate his familiarity with the standards for sanctions as well as to show the "thousands of dollars" the City has had to spend in attorney time when Sheehan brings frivolous actions.  (See Dkt. N. 30: Defs. Sanctions Br. at 20-23.)

The City had to defend against this case filed by Sheehan as it has had to do numerous times before.  Defendants have requested attorneys' fees for their defense of the entire action.  (See Dkt. No. 48: 12/12/05 Scharfstein Aff.)  It is important to deter not only Sheehan's actions but "similar activity by [other] litigants" in the future.  (See page 15 above.)  Since the Court has found only the derivative and state law claims to have been asserted frivolously, the Court will award attorneys' fees and costs only in connection with those claims.  See Fed. R. Civ. P. 11, 1993 Advisory Comm. Notes (explaining that any award of attorneys' fees should be "limited to those directly caused by inclusion of the improper count, and not those resulting from the filing of the complaint or answer itself," if the court finds only certain counts to be frivolous).

According to Assistant Corporation Counsel Scharfstein, she spent time preparing the summary judgment and sanctions motions against a complaint which, at the time, included the derivative and state law claims.  (12/12/05 Scharfstein Letter at 2 & n.1.)  Once Ramashwar's new attorney stipulated to the dismissal of those claims, defense counsel had to revise her motion papers accordingly.  (Id.)  According to the time records Scharfstein submitted, from September 16, 2005 (the first time she began work on the summary judgment and sanctions motions) through September 28, 2005 (the day after the derivative claims were dismissed) she spent 47 hours on the motion papers. (Dkt. No. 48: 12/12/05 Scharfstein Aff. Ex. A: Atty. Fees & Costs at 14.)  Based on

Scharfstein's billing rate of $75.60 per hour (12/12/05 Scharfstein Aff. ¶ 3), Scharfstein billed approximately $3,550 on these motions during that time frame. There is no breakdown, however, of how much time was spent working on each claim within the motions, but since some of the time between September 16-28 was spent on the non-frivolous malicious prosecution claim, only a fraction of the fees will be awarded. Given that the major claim in the underlying case was the non-frivolous malicious prosecution claim, the Court in its discretion imposes a sanction of $1,500 payable to defendants for attorneys' fees for Sheehan's Rule 11 violations.

In addition to imposing Rule 11 sanctions on Sheehan for the defendants' attorneys' fees incurred as a result of defending against the frivolous claims, Rule 11 also provides that, "[i]f warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the [Rule 11] motion." Fed. R. Civ. P. 11(c)(1)(A); see, e.g., Schottenstein v. Schottenstein, 230 F.R.D. 355, 362 (S.D.N.Y. 2005) ("The Rule allows, but does not require, the district court to award a prevailing party 'the reasonable expenses and attorney's fees incurred in presenting or opposing the motion.'"). Therefore, in its discretion, the Court awards defendants' the attorneys' fees incurred as a result of preparing and filing the instant Rule 11 sanctions motion.

According to Scharfstein's billing records, she spent 52.5 hours preparing the reply papers for the sanctions motion as well as the fee application filed in support of the sanctions motion.

(Dkt. No. 48: 12/12/05 Scharfstein Aff. Ex.A: Atty Fees & Costs at 17-20.)[4/]  The attorneys' fees incurred, at the rate of $75.60 per hour, was $3,969.  Since defendants were only partially successful on the Rule 11 sanctions motion, the Court in its discretion awards an additional $1,500 against Sheehan for the Rule 11 motion, for a total of $3,000.

## II.   SANCTIONS AGAINST SHEEHAN ARE NOT APPROPRIATE UNDER 28 U.S.C. § 1927 OR THE COURT'S INHERENT POWER

### A.   The Legal Standard Governing 28 U.S.C. § 1927

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Unlike Rule 11 sanctions which are tied to a signed filing, § 1927 looks at the attorney's course of conduct throughout the entire litigation.  United States v. International Bhd. of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991).  "Bad faith is the touchstone of an award under this statute."  Id.; accord, e.g., Wilder v. GL Bus Lines, 258 F.3d 126, 130 (2d Cir. 2001) (§ 1927 sanctions "are appropriate only where the attorney has acted in bad faith . . ."); Rubio v. City of New York, No. 03-CV-1349, 2005 WL 1498283 at *2 (E.D.N.Y. May 31, 2005) (Sheehan sanctions case).  "'[A]n award under § 1927 is proper when the attorney's actions are so completely without merit as to require the

---

[4/]    Some of Scharfstein's billing entries listed work done on both the summary judgment reply papers and the sanctions reply papers. (See 12/12/05 Scharfstein Aff. Ex. A: Atty Fees and Costs at 16-20.)  The Court did not include those entries in the above calculation since it had no way of discerning the time allotted to the separate motions.  Instead, the Court utilized only entries that referred to work spent only on the sanctions reply and fee application.

conclusion that they must have been undertaken for some improper purpose such as delay.'" Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986), cert. denied, 480 U.S. 918, 107 S. Ct. 1373 (1987); accord, e.g., State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 180 (2d Cir. 2004), cert. denied, 125 S. Ct. 1309 (2005); Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 78-79 (2d Cir. 2000); United States v. International Bhd. of Teamsters, 948 F.2d 1338 at 1345. The decision whether to sanction under § 1927 is within the Court's discretion. See, e.g., Wilder v. GL Bus Lines, 258 F.3d at 130; Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir. 2000); Momentum Luggage & Leisure Bags v. Jansport, Inc., 00 Civ. 7909, 2001 WL 1388063 at *5 (S.D.N.Y. Nov. 8, 2001).

"In this circuit, the Court may impose § 1927 or inherent-power sanctions only if there is 'clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith-that is, motivated by improper purposes such as harassment or delay.' 'The test is conjunctive, and neither in meritlessness alone nor improper purpose alone will suffice.'" Pacific Elec. Wire & Cable Co. v. Set Top Int'l Inc., 03 Civ. 9623, 2005 WL 2036033 at *5 (S.D.N.Y. Aug. 23, 2005) (citing Eisemann v. Greene, 204 F.3d at 396); accord, e.g., Revson v. Cinque & Cinque, P.C., 221 F.3d at 79; Pro Bono Inv., Inc. v. Gerry, 03 Civ. 4347, 2005 WL 2429767 at *2 (S.D.N.Y. Sept. 30, 2005). This bad faith standard has been interpreted "restrictively" by the Second Circuit, and courts must impose such sanctions "'with restraint and discretion .'" Eisemann v. Greene, 204 F.3d at 396; accord, e.g., Pacific Elec. Wire & Cable Co. v. Set Top Int'l

Inc., 2005 WL 2036033 at *5; Momentum Luggage & Leisure Bags v. Jansport, Inc., 2001 WL 1388063 at *5.

The purpose of §1927 is "'to deter unnecessary delays in litigation.'" United States v. International Bhd. of Teamsters, 948 F.2d 1338 at 1345 (citing Oliveri v. Thompson, 803 F.2d at 1274).

**B.** **Sheehan Has Not Violated 28 U.S.C. § 1927**

Defendants point to Sheehan's failure to respond to the "safe harbor" letter and several other communications from Scharfstein as Sheehan's "bad faith" conduct. (Dkt. No. 30: Defs. Sanctions Br. at 16-17.) While Sheehan did not conduct himself in a professional manner throughout this litigation, there is no evidence, let alone "clear evidence," of bad faith on Sheehan's part. Sheehan's conduct shows signs of neglect and sloppiness throughout the litigation, but there is no indication that he acted to delay the litigation. If anyone suffered it was Sheehan's client, who has the possibility of a malpractice claim against Sheehan. The Court declines to sanction Sheehan pursuant to 28 U.S.C. § 1927.[5/]

---

[5/] Defendants' motion for sanctions based on the Court's inherent power is similarly denied since it would be necessary to find that Sheehan acted in bad faith for the imposition of inherent power sanctions under the facts in this case. See, e.g., United States v. Seltzer, 227 F.3d 36, 41-42 (2d Cir. 2000); Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986) ("The only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys . . . while an award made under the court's inherent power may be made against an attorney, a party, or both."), cert. denied, 480 U.S. 918, 107 S. Ct. 1373 (1987); see also cases cited in Point II.A above.

### III.  DEFENDANTS' MOTION FOR SANCTIONS AGAINST DORIC SAM IS DENIED

Defendants are seeking to hold Doric Sam jointly responsible for any and all sanctions imposed against Sheehan because Sam "knew or should have known that plaintiff's claims had no merit and should have declined to appear for plaintiff or withdrawn from the case."  (Dkt. No. 30: Defs. Sanctions Br. at 24-25.)  While, "[a]bsent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees," Fed. R. Civ. P. 11(c)(1)(A) (emphasis added), where an individual attorney has not signed the offending document, there is no provision for holding him jointly responsible for a Rule 11 sanction.  Here, Sam is an associate in Sheehan's law firm, and he "participated in the litigation of the case . . . at the direction of Thomas Sheehan, [his] employer and supervisor."  (Dkt. No. 37: Sam Aff. ¶¶ 1-2.) Sheehan agrees that Sam's work on the case "was limited to the instructions that [he] gave him" and that Sam did not "participate in the creation of the complaint or the decision to bring this action." (Dkt. No. 33: Sheehan Br. at 5.)  Since Sam did not sign the complaint, it is inappropriate to sanction him under Rule 11.  Moreover, the Court does not find any evidence of bad faith by Sam sufficient to sanction him under 28 U.S.C. § 1927 or the Court's inherent power.

Defendants' sanctions motion against Doric Sam is DENIED.

## **CONCLUSION**

For the reasons discussed above, defendants' motion for sanctions against Thomas Sheehan, Esq. is granted in part and denied in part. Sheehan is ordered to pay $3,000 to Corporation Counsel as a Rule 11 sanction for partial reimbursement of defendants' attorneys' fees. The sanctions motion against Doric Sam, Esq. is denied.

SO ORDERED.

Dated:     New York, New York
           January 6, 2006

_____
**Andrew J. Peck**
United States Chief Magistrate Judge

Copies to:     Thomas Sheehan, Esq.
               Doric Sam, Esq.
               Fred Lichtmacher, Esq.
               Susan P. Scharfstein, Esq.